UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EZRA LEVY,

                Plaintiff,

    v.

THE LEGAL AID SOCIETY,

                Defendant.

Case No. 1:18-cv-3180 (LDH)(SJB)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT AND STAY DISCOVERY**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      PLAINTIFF'S OPPOSITION FAILS TO ADDRESS ANY OF LAS'S ARGUMENTS IN FAVOR OF DISMISSAL ...................................................................... 2

      A.    Plaintiff Cannot Be Shielded from the Consequences of His Conduct by the Fact That He *Only* Sent His Offensive Emails to Two Members of the Protected Class Whose Characteristics Offended Him. ............................................ 2

      B.    Plaintiff Cannot Show That He Had a Reasonable Basis for Believing That Wu's Email Was Unlawful or That He Was Engaging in Protected Activity by Complaining to Wu and Justine Luongo About It. .............................. 3

      C.    Plaintiff Selects as Comparators Individuals Whose Conduct Was in No Way Comparable. ........................................................................................................ 4

      D.    The Opposition Claims That LAS Permitted "Anti-Israel, Anti-Jewish, Anti-Semitic" Discrimination Against Him, yet the Facts as Pleaded in the Complaint Simply Fail to Support Any Plausible Theory Whereby Plaintiff Could Be Understood as a Victim of Unlawful Discrimination. .............. 5

      E.    There Is No Legal Basis for Plaintiff's Claim That His Emails Were a Legally Protected Request for a Religious Accommodation. ................................ 6

      F.    In Support of His Claims of Discrimination and Retaliation, Plaintiff Relies on Allegations Completely Unrelated to His Unlawful Email. ................... 7

II.     LAS'S MOTION TO STAY DISCOVERY SHOULD BE GRANTED AS UNOPPOSED. ...................................................................................................................... 8

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Baker v. The Home Depot*,
445 F.3d 541 (2d Cir. 2006)...............................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................5

*Coley v. Vannguard Urban Improvement Ass'n*,
12-cv-5565, 2014 WL 4793825 (E.D.N.Y. Sept. 24, 2014) ..............................................7

*Finkelshteyn v. Staten Island Univ. Hosp.*,
687 F. Supp. 2d 66 (E.D.N.Y. 2009) .................................................................................6

*Fraser v. MTA Long Island R.R..*,
307 F. Supp. 3d 105 (E.D.N.Y. 2018) ...............................................................................7

*Gregory v. Daly*,
243 F.3d 687 (2d Cir. 2001)...............................................................................................3

*Guity v. Uniondale Union Free Sch. Dist.*,
15-cv-5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) ..............................................7

*Howley v. Town of Stratford*,
217 F.3d 141 (2d Cir. 2000)...............................................................................................2

*Jaeger v. N. Babylon Union Free Sch. Dist.*,
191 F. Supp. 3d 215 (E.D.N.Y. 2016) ...............................................................................7

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
180 F.3d 426, 437 (2d Cir. 1999).......................................................................................2

*Rogers v. City of New Britain*,
189 F. Supp. 3d 345 (D. Conn. 2016)................................................................................2

*Thomas v. Westchester Cty. Health Care Corp.*,
232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002)........................................................................6

*Torres v. New York Methodist Hosp.*,
15-cv-1264, 2016 WL 3561705 (E.D.N.Y. Jan. 7, 2016)..................................................8

*Williams v. N.Y.C. Housing Auth.*,
458 F.3d 67 (2d Cir. 2006).................................................................................................8

The Legal Aid Society ("LAS") respectfully submits this memorandum of law in further support of its motion to dismiss the Complaint ("Complaint" or "Compl.") in its entirety and to impose a stay of discovery pending the Court's determination on this motion (the "Motion to Dismiss") and in response to Ezra Levy's ("Plaintiff") Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Stay Discovery ("Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

This case is not about Plaintiff's right to believe what he chooses to believe. What this case is about is Plaintiff's expression of his beliefs in a way that violated federal, state, and local anti-discrimination laws and triggered LAS's legal obligation to take responsive action. Closely held, sincere, beliefs—religious or otherwise—cannot excuse workplace harassment based on race, religion, national origin, gender or LGBTQ identity. There is no right to expression that allows one employee to tell another that her legally protected identity—her race, her creed, or her sexual orientation—is unacceptable, abnormal, or sinful. Nor is there any right based on one's beliefs to be provided with an accommodation that shields him/her from a protected class of people. Patently bigoted and discriminatory *conduct* directed at coworkers through an employer email system has legal consequences. Simply ascribing religious motivations to unlawful acts does not recast them as legally protected opposition or protest.

Plaintiff ignores LAS's legal obligations, proffering an Opposition that mostly repeats the Complaint in a highly selective and misleading manner. Plaintiff misquotes his own pleadings regarding the emails he received and tries to redirect this Court's attention from the fact that his

---

[1] Plaintiff joined Defendant's application for judicial notice. Opp. at 3 n.1. Plaintiff also requested that Defendant join Plaintiff's application for notice to be taken of a set of emails attached to his Opposition as Exhibit 1. *See id.* Defendants would consent to such an application on the condition that Plaintiff provide full and complete copies of the email chains he attaches and a proper declaration attesting to their accuracy and authenticity. The unlabeled emails presently attached appear from their numbering (i.e. 1/3, 2/7, 2/5 …) to be incomplete.

1

own email violated the law to whether his colleagues violated internal LAS policies. In truth, the only plausible interpretation of the Complaint is that LAS was well within its legal right to terminate Plaintiff's employment for harassing certain of his coworkers. Indeed, LAS was obligated to take responsive action regarding Plaintiff's emails. Accordingly, the Court should dismiss the Complaint in its entirety.

## ARGUMENT

I.  **PLAINTIFF'S OPPOSITION FAILS TO ADDRESS ANY OF LAS'S ARGUMENTS IN FAVOR OF DISMISSAL.**

   A.  **Plaintiff Cannot Be Shielded from the Consequences of His Conduct by the Fact That He *Only* Sent His Offensive Emails to Two Members of the Protected Class Whose Characteristics Offended Him.**

In his Preliminary Statement, Plaintiff argues that his March 8, 2017 email could not have created a hostile work environment because he only sent one email to Jason Wu ("Wu") and one other person. *See* Opp. at 2. One act of harassment, especially were it to go unaddressed by supervisors, is capable of creating a hostile work environment. *See, e.g.*, *Rogers v. City of New Britain*, 189 F. Supp. 3d 345, 354–55 (D. Conn. 2016) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)) (holding that a single use of a racial epithet or imagery by a non-supervisory co-worker can create a hostile work environment).[2] Although Wu did circulate Plaintiff's unlawful harassing email, Wu, as the victim, was under no legal obligation to keep Plaintiff's email confidential and was free – as is any victim of unlawful harassment—to call his harasser out publicly. Moreover, Plaintiff also sent a subsequent office-wide email recirculating the original chain. *See* Declaration of Scott Rosenberg, Ex. A (replying all to Wu: "Exist, but keep me out of it.").

---

[2] Unless otherwise indicated, all internal citations and quotations are omitted from herein.

2

> **B. Plaintiff Cannot Show That He Had a Reasonable Basis for Believing That Jason Wu's Email Was Unlawful or That He Was Engaging in Protected Activity by Complaining to Wu and Justine Luongo About It.**

Plaintiff correctly notes that "a protected activity" can be established through a showing of a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. *See* Opp. at 16. However, he fails to satisfy this requirement, as the Complaint contains no facts from which a reasonable inference could be drawn that Wu's email—the subject of his alleged protest/request—could reasonably have been perceived as unlawful. *See Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) (informal protests of discrimination are protected *only* so long as the employee has "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law"). Nor can Plaintiff satisfy this requirement, as Wu's email simply advocated for the rights of transgender individuals and made no reference, directly or indirectly, to religion. *See* Compl. ¶ 18.

Plaintiff's argument that Wu's email violated the LAS Email Policy is wholly without merit. Arguing that "LAS criminal defense attorneys, like Plaintiff, can only work on cases they are assigned to by a Judge" he reasons that the only connection Wu's email could have to client-centered work would be if a criminal defense attorney were assigned to represent a person charged with the murder of a transgender victim. Opp. at 17. This argument is entirely fallacious. *Compare* Mem. at 13 *with* Opp. at 17. LAS operates three practice areas, only one of which involves criminal defense. *See* Mem. at 3-4. The Civil Practice litigates cases like *Cruz v. Zucker*, 14-cv-4456, 2017 WL 1093285 (S.D.N.Y. Mar. 10, 2017), that challenge discrimination against transgender individuals. *See. id.* Wu's email drawing attention to discrimination against transgender individuals fell squarely within the mission of the Civil Practice.

### C. Plaintiff Selects as Comparators Individuals Whose Conduct Was in No Way Comparable.

Plaintiff falsely equates LAS staff who condemned his bigotry with his own conduct, which constituted unlawful harassment. Plaintiff's conduct is simply not comparable to his coworkers—spreading bigotry is not the same as condemning it. As previously argued, none of the LAS staff attorney emails excerpted in the Complaint contain the necessary "incendiary language, racial epithets or other hallmarks of [] animus" that would suggest that they were directed at anything other than Plaintiff's unlawful anti-LGBTQ harassment. *See* Mem. at 20.

Furthermore, Plaintiff materially misquotes his own Complaint regarding the content of these emails in a manner that is arguably sanctionable. For example, in his Opposition, Plaintiff states that Lisa Edwards ("Edwards") "referred to Plaintiff's fellow Jews as 'bigoted brothers, sisters, colleagues, and friends;'" however, in his Complaint it is alleged only that Edwards "asked for people to 'stand up and call out your bigoted brothers, sisters, colleagues, and friends . . . .'" *Compare* Opp. at 18 *with* Compl. ¶ 21c. Even more egregiously, Plaintiff contends in his Opposition that Stephen Terry ("Terry") "wrote that '…as a Jew…[y]ou're no different and you don't belong here,'" whereas the Complaint actually alleges that Terry wrote, in relevant part, "And ***as a Jew*** [Terry, talking about himself], I find having to work alongside someone like him to be particularly painful and a terrible irony. You [Plaintiff] remind me of the bigots I grew up with back in New Mexico and West Texas, Ezra. ***You're no different and you don't belong here.***" *Compare* Opp. at 18 *with* Compl. ¶ 21f (emphasis added). As previously argued, these co-workers' responses—as actually pleaded in the Complaint—condemned Plaintiff's anti-LGBTQ statements without condemning his religious identity. *See* Mem. at 20-21. Plaintiff's misquotes were either reckless or were an attempt to purposefully mislead the Court in an attempt to bolster his pleadings.

4

Left without any allegations of actual discriminatory statements or conduct, Plaintiff attempts to cast his co-workers who called him out for his unlawful statements as perpetrators and comparators. But, yet again, Plaintiff misunderstands what is required under the law. *See* Opp. at 19-21. Rather than proffering factual allegations to render any of the alleged comparisons plausible, the Complaint relies on conclusory statements such as "[o]ther non-Jewish employees and employees who did not oppose discriminatory practices were not treated this way." *See* Compl. ¶¶ 20-21. This argument misses the point entirely. Staff who criticized Plaintiff's harassing email are not similarly situated to the Plaintiff, himself, who perpetrated the harassment.

Indeed, Plaintiff never addresses Defendant's argument that he has failed to actually allege *a single* similarly situated person, let alone any factual allegations to render his comparison plausible. Instead, he argues that he is not required to "cite the name of each and every similarly situated" person. *Compare* Opp. at 20-21 *with* Mem. at 21-22. Plaintiff's proffer regarding comparators fails the basic plausibility requirements imposed by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and accordingly, must be dismissed.

> D. **The Opposition Claims That LAS Permitted "Anti-Israel, Anti-Jewish, Anti-Semitic" Discrimination Against Him, yet the Facts as Pleaded in the Complaint Simply Fail to Support Any Plausible Theory Whereby Plaintiff Could Be Understood as a Victim of Unlawful Discrimination.**

Plaintiff argues that his receipt of an email from a colleague, Jane-Robert Sampeur ("Sampeur"), promoting an event where Aber Kawas ("Kawas"), a person whom Plaintiff—not Sampeur—identifies as a Palestinian-American, would be speaking, constituted "anti-Israel, anti-Semitic, anti-Jewish" discrimination that somehow LAS permitted. Opp. at 18; Compl. ¶ 17. Sampeur merely notified staff of an event at which Kawas would be speaking. The Complaint does not allege that Sampeur's email mentioned Israel or any such boycott, much less that it made references to any religion. *Compare* Opp. at 1, 6, 18, 21 *with* Compl. ¶ 17. Notably, it was

5

Plaintiff—not Sampeur—who insisted that Kawas called for the public boycott of Israel/Israeli products. *See* Opp. at 18. Plaintiff's subject feelings about this announcement are insufficient. His feelings must also be objectively reasonable. Under this standard, the mere announcement of a speech cannot constitute unlawful harassment. *See* Mem. at 18-19, *cf. Thomas v. Westchester Cty Health Care Corp.*, 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) (noting that "the employee cannot merely show that she subjectively believed her employer was engaged in unlawful employment practices, but also must demonstrate that her belief was "objectively reasonable").

Moreover, Plaintiff attempts to equate pro-Palestinian positions with anti-Israeli sentiments and anti-Israeli political sentiments with anti-Semitism or anti-Jewish beliefs, *see, e.g.*, Opp. at 21, but political views cannot be presumed to equate to religious biases without further facts such as racial/religious epithets and slurs. *See Finkelshteyn v. Staten Island Univ. Hosp.*, 687 F. Supp. 2d 66, 78 (E.D.N.Y. 2009) (commentary on "geo-political issues" relating to Israel or Palestinians cannot alone give rise to an inference of anti-Semitism). Plaintiff offers no such additional facts, and, accordingly his cause of action should be dismissed.

Finally, as with the preceding point, Sampeur's email even less comparable to Plaintiff's than were his other co-workers' emails. *Compare* Compl. ¶ 17 *with* Compl. ¶ 19.

E. **There Is No Legal Basis for Plaintiff's Claim That His Emails Were a Legally Protected Request for a Religious Accommodation.**

Plaintiff argues that his email in response to Wu's can "be clearly interpreted" as a request for the "accommodation" of having "LAS employees abide by the LAS Email and Equal Employment Policy." *See* Opp. at 15-16.[3] Plaintiff offers no legal authority for this proposition. Contrary to Plaintiff's assertions, the provision of reasonable accommodations would only be

---

[3] Whether Wu's email violated any internal policy of LAS is irrelevant. Nonetheless, LAS maintains that Wu's email was work related. *See* p. 3 *supra*; *see also* Mem. at 12-14.

6

implicated if his religious practice was somehow conflicting with an employment requirement. *See Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).

> **F.  In Support of His Claims of Discrimination and Retaliation, Plaintiff Relies on Allegations Completely Unrelated to His Unlawful Email.**

The Complaint alleges that LAS scheduled continuing legal education classes ("CLEs") and other trainings on Jewish holidays and the Sabbath. *See* Compl. ¶16. In his Opposition, Plaintiff alleges for the first time that his termination was in retaliation for his prior complaints about this. *See* Opp. at 14-15. Preliminarily, as this claim does not appear in the Complaint, it is wholly improper for Plaintiff to attempt to add it through his opposition papers. *See Guity v. Uniondale Union Free Sch. Dist.*, 15-cv-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) (noting that "it is well established that allegations added in opposition to a motion to dismiss cannot cure defects in the operative pleading.") (citing *Coley v. Vannguard Urban Improvement Ass'n*, 12-cv-5565, 2014 WL 4793825, at *2 (E.D.N.Y. Sept. 24, 2014) ("In evaluating a motion to dismiss, the Court is constrained to consider the 'four corners' of the *operative* pleading . . . .") (emphasis added)).

In addition, Plaintiff fails to set forth any facts that plausibly connect Plaintiff's termination to his alleged objections regarding the scheduling of the CLE courses, and no causal connection can plausibly be inferred based on temporal proximity as Plaintiff has wholly failed to disclose the timeframe for when his alleged complaints regarding CLE scheduling occurred. *See Fraser v. MTA Long Island R.R.*, 307 F. Supp. 3d 105, 115 (E.D.N.Y. 2018) (finding that delays ranging from four and half to thirteen months between complaints and retaliatory adverse employment action was much too great to allow reasonable inference of causal connection); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 228-29 (E.D.N.Y. 2016) (finding "allegation that, at some unknown time, [plaintiff] was prevented from obtaining unspecified promotions or

7

other employment opportunities" insufficient as to plead adverse employment action under Title VII). This failure is even more problematic for Plaintiff as one of the few individuals to whom Plaintiff alleges he complained, Attorney-in-Charge Steven Banks, left LAS after being appointed Commissioner of the New York City Human Resources Administration and the Department of Social Services in 2014. *Compare* Compl. ¶ 16 *with* https://www1.nyc.gov/site/hra/about/meet-commissioner.page. The lack of any indication as to when the alleged complaints occurred prevents LAS from assessing the applicability of the statute of limitations. *See, e.g.*, *Torres v. New York Methodist Hosp.,* 15-cv-1264, 2016 WL 3561705, at *5 (E.D.N.Y. Jan. 7, 2016) (noting that before commencing a Title VII suit in federal court, a complaint to the E.E.O.C. or the equivalent state agency must be made within 300 days of the alleged discriminatory conduct) (citing 42 U.S.C. § 2000e-5(e)(1)); *Williams v. N.Y.C. Housing Auth.,* 458 F.3d 67, 69 (2d Cir. 2006)). This defect in the Complaint's notice independently warrants dismissal of this cause of action.

## II. LAS'S MOTION TO STAY DISCOVERY SHOULD BE GRANTED AS UNOPPOSED.

Plaintiff's Opposition fails to address substantively or to counter any of Defendant's arguments in favor of a stay of discovery. *See* Mem. at 24-25. Accordingly, the Court should mark this portion of the Motion to Dismiss unopposed and grant the stay of discovery.

## **CONCLUSION**

For the above-stated reasons and for those articulated in our original Memorandum of Law, Defendants respectfully request that the Court dismiss the Complaint in its entirety and, in the interim, impose a stay of all discovery.

Dated:   New York, New York
         October 18, 2018

*/s/ Jane L. Hanson*
Jane L. Hanson
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5512
Facsimile: (212) 822-5512
jhanson@milbank.com

*Attorney for Defendant Legal Aid Society*