UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

EZRA LEVY,

                            Plaintiff,

                v.

THE LEGAL AID SOCIETY,

                          Defendant.

**MEMORANDUM AND ORDER**

18-CV-03180 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

    Plaintiff Ezra Levy brings the instant action against Defendant The Legal Aid Society ("Legal Aid") asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL") for discrimination on the basis of his religion and retaliation. (Compl., ECF No. 1.) Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety. (ECF No. 11.)

## BACKGROUND[1]

    Plaintiff, an observant and religious Jew who typically wears a yarmulke to work, began working as a staff attorney for Legal Aid on September 8, 1998. (Compl. ¶¶ 10–11.) Legal Aid maintains equal employment policies which include a laudably expansive antiharassment policy ("Antiharassment Policy"). (Decl. Scott A. Rosenberg Supp. The Legal Aid Society's Mot. Dismiss Ex. B at 2, ECF No 13-2.) Through the Antiharassment Policy the Legal Aid "prohibits conduct that constitutes or could lead or contribute to harassment because of an individual's . . . religion." (*Id.*) Under the umbrella of the Antiharassment Policy, the Legal Aid also prohibits

---

[1] The following facts are taken from the complaint and any documents incorporated by reference therein and are assumed to be true unless otherwise indicated.

1

the use of the organization's email system to harass ("Email Policy").[2]  (*Id.*)  Specifically, the Email Policy prohibits, "[the] use of [Legal Aid] computers (including via the Internet) or [Legal Aid]'s e-mail system to engage in any communication that is offensive to persons based on characteristics protected under this policy."  (*Id.*)  Plaintiff's causes of action stem from multiple emails exchanged among his colleagues at Legal Aid.

On March 7, 2017, Jane-Robert Sampeur, a staff attorney, sent an office-wide email promoting a speaking event featuring an individual Plaintiff alleges was known for publicly calling for the boycott of Israel and Israeli products.  (Compl. ¶ 17.)  On March 8, 2017, Jason Wu, another Legal Aid staff attorney, sent an office-wide email about International Women's Day (the "Wu Email").  (*Id.* ¶ 18.)  The Wu Email read in part:  "Let us be reminded that in our continued fight for social justice, we must center the experiences and struggles of transgender women of color.  In just the first few months of 2017, seven transgender women have been murdered in the United States . . . ."  (*Id.* ¶ 18.)  Plaintiff responded directly to Wu and copied Justine Luongo, Attorney-in-Charge of the Criminal Defense Practice, with the following email:

> No!, [sic] enough [sic] is enough!! [sic] It's international women's day. That's it. Nothing to do with LGBT. Believe it or not, there are many of us at Legal Aid who are offended by the constant e-mails trying to brainwash us that LGBT is normal and acceptable. According to my religious beliefs it is sinful and will remain so for ever [sic]. I do not send out emails trying to proselytize you to accept my religious convictions so please have the courtesy to create a forum within the e-mail network for those who agree with you and spare me your sinful conduct. And before you start any accusations here, I do not advocate killing anyone over their self-defining.

---

[2] The Court is permitted to consider the Antiharassment Policy and Email Policy, as Plaintiff has referenced the policies in numerous paragraphs in his complaint.  (*See* Compl. ¶¶ 14, 17, 22-26, 28); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint . . . and documents incorporated by reference in the complaint.").

(*Id.* ¶ 19.) In turn, Wu responded by email: "Thank you Ezra for your email below-it is very clear that we have so much work to do." (*Id.* ¶ 20.) Wu's email was copied to the office-wide distribution list. In response to Wu's email, nine staff attorneys wrote emails to Plaintiff condemning Plaintiff's remarks, some stating that Plaintiff was a "bigot," "misogynist," "racist," and "coward[ ]." (*Id.* ¶ 21.) Other staff attorneys stated that by his email, Plaintiff was attacking a sector of communities served by Legal Aid and engaging in hate speech that was not in accordance with Judaism. (*Id.*)

On March 10, 2017, Allan Fox, Legal Aid's Chief Human Resources Officer, gave Plaintiff a notice of suspension, without pay, pending an investigation of his alleged violation of the Antiharassment Policy and Email Policy. (*Id.* ¶ 23.) On April 4, 2017, Seymour James, Legal Aid's Attorney-in-Chief, sent Plaintiff a notice of termination, which indicated that "[Plaintiff's] termination was based on an alleged violation of the Legal Aid Policy Prohibiting Discrimination and harassment and the Legal Aid E-mail Policy." (*Id.* ¶ 28.)

Separately, Plaintiff alleges that Legal Aid regularly sponsored training events and continuing legal education ("CLE") courses on Jewish holidays and on the Sabbath. (*Id.* ¶ 16.) Plaintiff alleges that he complained on several occasions to Legal Aid's leadership, including Seymour James, Dennis Murphy, and Steven Banks, about his inability to attend the training events and CLE courses due to his religious commitments. (*Id.*) Nonetheless, the training events and CLE courses continued to be scheduled on Jewish holidays and on the Sabbath. (*Id.*) Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or around April 4, 2018, and received a notice of right to sue on April 6, 2018. (*Id.* ¶ 4.) Plaintiff commenced this action on May 30, 2018.

3

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

**DISCUSSION**

**I.    Discrimination under Title VII**

A Title VII claim is analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). At the first step of this analysis, a plaintiff bears the burden of establishing a prima facie case of employment discrimination by showing that (1) he belongs to a protected class, (2) he was qualified for the position he held, and (3) he suffered an adverse employment action that (4) occurred under circumstances giving rise to an inference of discrimination. *Id*. at 307. Notably, to survive a motion to dismiss, a plaintiff need not plead a prima facie case of discrimination. *Id*. Rather, a plaintiff need only allege facts that plausibly support that the plaintiff is a member of a protected class, was qualified for the position he held,

4

and suffered an adverse employment action that offers at least minimal support for the proposition that the employer was motivated by discriminatory intent. *Id.* at 311. Nevertheless, Plaintiff has alleged a prima facie case here. That is, Plaintiff has alleged that he is an observant Jew, performed his duties as a staff attorney satisfactorily for almost twenty years, and was terminated from that position. These allegations satisfy the first three elements of a prima facie case. And, although Defendant argues otherwise, Plaintiff has also sufficiently alleged that he was terminated under circumstances giving rise to an inference of discrimination—the fourth and final element.

To allege the requisite discriminatory intent, a plaintiff may allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Direct evidence of discrimination may exist, for example, in the form of disparaging comments regarding a plaintiff's protected class. *See Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984) ("A plaintiff may sustain his burden through introduction of direct evidence, such as statements by the employer that age was the reason for the discharge."). No such conduct is alleged by any person involved in the decision to suspend or terminate Plaintiff. Indirect evidence, on the other hand, includes evidence that similarly situated comparators outside of Plaintiff's protected class were treated more favorably than Plaintiff. *Littlejohn*, 795 F.3d at 312 ("A causal connection . . . can be shown . . . indirectly . . . through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct."). In cases such as this, courts generally will look to whether a plaintiff and his comparators were (1) "subject to the same performance evaluation and discipline standards" and

5

(2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff alleges that he was suspended and terminated in response to purported violations of the Email Policy, while his non-Jewish or nonobservant Jewish colleagues were not punished for similar offenses. Among other purported comparators, Plaintiff directs the Court to Phillip Guttman and Imtiaz Hossain. Guttman wrote to Plaintiff:

> Your particular sect of Judaism may foster bigoted and hateful ideas, and you may subscribe to these, but you do not speak for the Jewish community and you are fundamentally wrong on insinuating that trans people or any LGBTQ people are "sinful" in the eyes of G-d or our religion.

(Compl. ¶ 21.a.) Likewise, Hossain wrote, "People who have such 'religious convictions' will just walk past you with a smile and continue to be a bigot, misogynist and overall hate-filled, hypocrite." (*Id.* ¶ 21.b.)

On their face, Guttman's and Hossain's emails are seemingly violative of the Antiharassment Policy and Email Policy. Neither author identifies himself as an observant Jew, and both are therefore outside of Plaintiff's protected class.[3] And, critical to the inquiry here, Plaintiff alleges that neither author was terminated, suspended, or even investigated for his purported violations. (*Id.* ¶¶ 22-25.) This is sufficient to establish the requisite inference of discrimination.

Defendant seeks to avoid this conclusion by inviting the Court to compare the severity of Plaintiff's conduct to that of the other alleged wrongdoers. Defendant notes that, unlike Plaintiff's "egregious" emails, other staff attorneys' emails did not "attack[] Judaism itself" and did not describe "Plaintiff as 'sinful,' not acceptable, or abnormal due to his Jewish identity."

---

[3] By Guttman's own email, he distinguished himself as a "secular Jew," and therefore not in the same protected class as Plaintiff. (Compl. ¶ 21.a.)

6

(Mem. Law Supp. Def.'s Mot. Dismiss Compl. & Stay Disc. ("Mot.") 24, ECF No. 12.)  While at some later stage in this proceeding, a jury may consider the qualitative differences between Plaintiff's emails and those of his comparators, at this stage, although not identical, the respective conduct bears a sufficiently close resemblance to defeat a motion to dismiss.  *See Brown v. Daikin Am., Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (recognizing that a plaintiff and comparator's circumstances must bear a "reasonably close resemblance," but need not be "identical" (quoting *Graham*, 230 F.3d at 40)); *see also Graham*, 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury.")).[4]

Defendant further urges that Plaintiff's purported violation of the Email Policy is a legitimate non-discriminatory purpose for Plaintiff's suspension and termination, thereby defeating Plaintiff's claims.  (Mot. 15-16.)  Defendant's argument displays a misapprehension of Plaintiff's burden at this stage of the proceedings.  It is true that under the *McDonnell-Douglas* framework, once a plaintiff successfully makes out a prima facie case of discrimination, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse employment action, which could potentially defeat a plaintiff's claim.  411 U.S. at 802.  To survive a motion to dismiss, however, a plaintiff is not required to plead a prima facie case of discrimination, and any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial.  *See Vega*, 801 F.3d at 84 (acknowledging Supreme

---

[4] That said, excepting the emails from Guttman and Hossain, the Court is not necessarily convinced that the emails allegedly sent from Jane-Robert Sampeur, Lisa Edwards, Asalia Torres, Ferdinand Cesarano, Stephen Terry, Devi Vairavan, Julie Fry, and Todd Smith bear the same reasonable resemblance to Plaintiff's emails to support an inference of discrimination.  For example, Sampeur's email simply promoted a speaking event which happened to feature an individual that Plaintiff purports is known for publicly calling for the boycott of Israel and Israeli products.  (Compl. ¶ 17.)  Based on Plaintiff's recitation of the content of Sampeur's email, the email is bereft of any reference to Judaism or Jewish people.  Similarly, Wu's email responses do not use any abusive, discriminatory, or derogatory language.  (Compl. ¶¶ 18, 20.)  Nonetheless, the alleged emails from Guttman and Hossain are sufficient to support the claim.

7

Court precedent that the "prima facie case" requirement of *McDonnell Douglas* applied only at the summary judgment phase because it "is an evidentiary standard, not a pleading requirement" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002))). As noted above, at this stage, a Plaintiff only has a "minimal burden" of alleging facts "suggesting an inference of discriminatory motivation." *Id.* at 85. Plaintiff has met his burden.

## II.     Retaliation under Title VII

To state a claim for retaliation under Title VII, it is axiomatic that a plaintiff must allege "participation in a protected activity." *Littlejohn*, 795 F.3d at 316. To be sure, not all protected activity must be made by way of filing a formal charge or complaint. Rather "informal protests of discriminatory employment practices" can also constitute a protected activity, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). An employee lacks a reasonable belief that he is opposing an unlawful employment practice if the opposition is "directed at something that . . . is not properly within the definition of an 'unlawful employment practice.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593-94 (2d Cir. 1988)).

Only certain of Plaintiff's alleged actions constitute protected activity under law. Plaintiff maintains that this March 8, 2017 email to Wu and Luongo opposing the Wu Email was a protected activity. (Mem. Law Opp. Def.'s Mot. Dismiss Compl. & Stay Disc. 18, 22, ECF No. 14.) It was not. Although Plaintiff argues that he complained that the Wu Email was sinful, offensive, and went against his religious beliefs, he does not allege that the Wu Email was discriminatory. *Cf. Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014) (summary

8

order) (affirming dismissal where plaintiff alleged she had complained of her supervisor's mistreatment but failed to allege that such treatment was discriminatory). Indeed, no reasonable reading of Plaintiff's March 8 email allows for the conclusion that Plaintiff was complaining of conduct that the Defendant would reasonably recognize as unlawfully discriminatory. *See Bamba v. Fenton*, 758 F. App'x 8, 12-13 (2d Cir. 2018) (summary order) (affirming dismissal where plaintiff's internal complaint only conclusorily alleged plaintiff was "discriminated and defamed" and employer would not reasonably understand that such a complaint was directed at conduct prohibited by Title VII); *Lucio*, 575 F. App'x at 6 ("While it is unnecessary for an individual to specifically invoke the word discrimination when complaining in order to alert her employer to her protected activity, there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity."). Thus, to the extent Plaintiff's retaliation claim is predicated on his March 8 email, it must fail.

Next, although Plaintiff's protestations regarding the scheduling of the training sessions during Jewish holidays and the Sabbath and his request for accommodations regarding the same constitute protected activities, Plaintiff has not adequately alleged a causal connection between such activities and any adverse employment action. *See Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) (finding that a request for a religious accommodation itself constitutes protected activity for purposes of a Title VII retaliation claim). A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

9

*Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Here, there are no allegations that would directly suggest Plaintiff's termination was in retaliation for his request for religious accommodation. To the contrary, according to the notice of termination referenced in the complaint, along with Plaintiff's own allegations in support of his discrimination claim, Plaintiff was terminated for violating the Email Policy. (Compl. ¶ 23.) Also lacking from the complaint is any indication of when he complained of the schedule conflicts or sought an accommodation. These dates, if sufficiently close in time to his suspension and termination, would have permitted the Court to infer the requisite causal connection. *See Littlejohn*, 795 F.3d at 319-20 (reversing dismissal of retaliation claim where the plaintiff alleged that "her demotion occurred within days after her complaints of discrimination" and where the other elements of retaliation were adequately pleaded). In the absence of such facts, Plaintiff's retaliation claim must fail. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (summary order) (affirming dismissal where "the first alleged act of retaliation occurred eleven months after the plaintiff's protected activity, and where nothing in the plaintiff's pleadings, even liberally construed, otherwise suggest[ed] a plausible causal connection between two events occurring so far apart"); *Littlejohn*, 795 F.3d at 319 (finding none of defendants' actions directly indicated a racial bias and plaintiff failed to show how such actions directly established a retaliatory animus based on plaintiff's complaints of discrimination).

### III.   Claims under the NYSHRL and NYCHRL

"New York Courts examine claims under [the NYSHRL] with the same analytical lens as corresponding Title VII-based claims." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

10

Therefore, for the reasons the Court finds that Plaintiff has sufficiently alleged a claim for discrimination, but not retaliation, under Title VII, the same conclusions are warranted with respect to the analogous NYSHRL claims.

On the other hand, "[c]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Johnson v. Andy Frain Svcs., Inc.*, 638 F. App'x 68, 71 (2d Cir. 2016) (summary order) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). "NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination." *Id.* Having determined that Plaintiff has adequately alleged a claim for discrimination under Title VII, the same conclusion is warranted with respect to the analogous NYCHRL claim. *Patane*, 508 F.3d at 115. However, even viewing Plaintiff's retaliation claim broadly, and in view of the liberal pleading requirement, Plaintiff has not sufficiently alleged a claim for retaliation. *Walker v. City of New York*, No. 11-CV-2689, 2013 WL 991101, at *5 (E.D.N.Y. Feb. 7, 2013) (recommending dismissal of plaintiff's NYCHRL claim where plaintiff failed to allege any causal connection between the protected activity and alleged adverse employment action), *R. & R. adopted*, 2013 WL 990999 (Mar. 13, 2013). Therefore, Plaintiff's retaliation claim under NYCHRL is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with respect to Plaintiff's retaliation claims under Title VII, NYSHRL, and NYCHRL and DENIED with respect to Plaintiff's discrimination claims under Title VII, NYSHRL, and NYCHRL. Plaintiff's claims for retaliation under Title VII, NYSHRL, and NYCHRL are dismissed.

SO ORDERED:

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
September 30, 2019