UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------

EZRA LEVY

                   Plaintiff,

    - against –

THE LEGAL AID SOCIETY,
                         Defendant.

ANSWER
AND
AFFIRMATIVE DEFENSES
OF DEFENDANT

Civil Action No.  18-cv-3180

---------------------------------------------------------------------------

Defendant The Legal Aid Society ("LAS"), by and through its undersigned counsel,
answer and respond to Plaintiff's Complaint (the "Complaint").  Any allegation not expressly
admitted is denied.  In addition, no responses are necessary regarding claims of retaliation as
those claims have been dismissed.  All responses herein are based on information known to LAS
as of the date hereof, and LAS reserves the right to supplement or amend their responses based
on new information.

## JURISDICTION AND VENUE

1.      The first paragraph of the Complaint lists the statutes under which the allegations
of religion-based discrimination in the above-captioned action (the "Action") have been filed and
thus does not require a response from LAS.

2.      The second paragraph of the Complaint lists the statutes under which Plaintiff
invokes jurisdiction and thus does not require a response from LAS.

3.      The third paragraph of the Complaint asserts a legal conclusion and thus does not
require a response from LAS.

4.      The fourth paragraph of the Complaint asserts legal conclusions and thus does not require a response from LAS, except LAS admits that Plaintiff filed a charge of discrimination against LAS with the Equal Employment Opportunity Commission, which issued a Notice of Right to Sue on April 4, 2018, and that Plaintiff filed the Complaint on May 30, 2018.

## PARTIES

5.      LAS lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the fifth paragraph of the Complaint concerning Plaintiff's residency, except admits that Plaintiff is an attorney admitted to practice law in the State of New York.

6.      LAS admits the allegation set forth in the sixth paragraph of the Complaint.

7.      LAS admits the allegations set forth in the seventh paragraph of the Complaint.

8.      LAS admits the allegations set forth in the eighth paragraph of the Complaint.

9.      The ninth paragraph of the Complaint asserts legal conclusions and thus does not require a response from LAS, except LAS admits that it employs more than 15 individuals.

## BACKGROUND

10.      LAS admits the allegations set forth in the tenth paragraph of the Complaint.

11.      LAS admits the allegations set forth in the eleventh paragraph of the Complaint.

12.      LAS denies the allegations set forth in the twelfth paragraph of the Complaint except admits that Plaintiff received an internal felony certification in December 1999.

13.      LAS denies the allegations set forth in the thirteenth paragraph of the Complaint and notes that Plaintiff's claims for retaliation have been dismissed.

## FACTS

14.      LAS denies the allegations set forth in the fourteenth paragraph of the Complaint.

15.      LAS denies the allegations set forth in the fifteenth paragraph of the Complaint.

- 2 -

16.    LAS denies the allegations set forth in the sixteenth paragraph of the Complaint.

17.    LAS denies the allegations set forth in the seventeenth paragraph of the Complaint, except admits that Jane-Robert Sampeur sent an email to LAS employees on March 7, 2017.

18.    LAS admits the allegations set forth in the eighteenth paragraph of the Complaint.

19.    LAS admits the allegations set forth in the nineteenth paragraph of the Complaint and refers the Court to the entire email sent by Plaintiff, a portion of which is quoted in the Complaint.

20.    LAS denies the allegations set forth in the twentieth paragraph of the Complaint, except admits that Wu sent an email stating, in part, "Thank you Ezra for your email below-it is very clear that we have so much work to do."

21.    LAS denies the allegations set forth in the twenty-first paragraph of the Complaint, except admits that Plaintiff received emails from the LAS employees listed therein.

22.    LAS admits the allegations set forth in the twenty-second paragraph of the Complaint insofar as (a) LAS has in place a Policy Prohibiting Discrimination and Harassment in the workplace, and (b) no LAS employee accused any of the individuals Plaintiff names in the twenty-second paragraph of violating the LAS Policy Prohibiting Discrimination and Harassment by sending the emails referred to in the twenty-first paragraph of the Complaint. LAS further notes that Plaintiff's claims for retaliation have been dismissed.

23.    LAS admits the allegations set forth in the twenty-third paragraph of the Complaint insofar as the quoted portions represent two limited excerpts from the Notice of Suspension, and avers that the reasons for Plaintiff's suspension were set forth in the Notice of Suspension as follows:

Your statements, made utilizing the Society's e-mail system, to two members of the LGBTQ community violated both the Society's Policy Prohibiting Discrimination and Harassment and the Society's E-mail Policy.  That Policy states, in pertinent part, that "Each individual has the right to work in a professional atmosphere that promotes equal opportunities and prohibits discriminatory practices based on any protected status or personal characteristic, including ... gender, sex, ... sexual orientation, gender identity or expression … ."  The Policy prohibits harassment based on any protected status or personal characteristic that "can demean abuse, intimidate, or offend others because of their personal attributes or background."  Examples of harassment set forth in the policy include the use of statements that "are derogatory or demeaning to an individual's or group's characteristics or that promote negative stereotyping, ridiculing or insulting behavior."  Violations of the Policy may result in "disciplinary action such as warnings, reprimands, reassignment, temporary suspension without pay, or termination of employment."

The Society's E-mail Policy states that no e-mail messages should be created or sent if they contain materials that are "intimidating, hostile, or offensive with respect to actual or perceived ... sexual orientation, gender, gender identity or expression ...."  A violation of the E-mail Policy is a ground for disciplinary action that may include in discharge from employment.

Regardless of your convictions, religious or otherwise, you are prohibited from using the Society's resources, including its e-mail system, to engage in hate speech against members of the LGBTQ community or any other protected class.  In addition, your derogatory, demeaning, and insulting comments raise serious questions whether you are capable of representing our LGBTQ clients competently, effectively, and without disrespect or disfavor.

24.    LAS admits the allegations set forth in the twenty-fourth paragraph of the Complaint insofar as no LAS employee accused the individuals that Plaintiff names therein of violating the LAS Email Policy by sending the emails referred to in the twenty-first paragraph of the Complaint.

25.    LAS denies the allegations set forth in the twenty-fifth paragraph of the Complaint insofar as Plaintiff alleges that the individuals named in this paragraph violated the LAS Policy Prohibiting Discrimination and Harassment or the LAS E-Mail Policy.  LAS avers

that no complaints of such alleged violations were ever made, and that such non-existent complaints were not investigated.

26.     LAS denies the allegations set forth in the twenty-sixth paragraph of the Complaint.

27.     LAS denies the allegations set forth in the twenty-seventh paragraph of the Complaint, notes that Plaintiff's claims for retaliation have been dismissed, and avers that the reasons for Plaintiff's suspension of employment were that he utilized LAS's resources, including its e-mail system, to engage in hate speech against members of the LGBTQ community, and that Plaintiff's derogatory, demeaning, and insulting comments raised serious questions as to whether he was capable of representing LAS's LGBTQ clients competently, effectively, and without disrespect or disfavor.

28.     LAS denies the allegations set forth in in the twenty-eighth paragraph of the Complaint, except admits that LAS Attorney-in-Chief Seymour James sent Plaintiff a Notice of Termination effective April 4, 2017; notes that Plaintiff's claims for retaliation have been dismissed; and avers that the reasons for the termination of Plaintiff's employment were fully set forth in the Notice of Termination and a subsequent Grievance Decision issued by Seymour James on May 24, 2017, as follows:

(a)     As set forth in the Notice of Termination:

> Your use of the Legal Aid e-mail system to communicate to two Legal Aid employees who self-identify as LGBTQ that their gender identities are "sinful"; that communications like Mr. Wu's constitute a form of "brainwash[ing] that LGBT is normal and acceptable"; and that Mr. Wu should "spare me your sinful conduct," violated Legal Aid's Policy Prohibiting Discrimination and Harassment and its E-mail Policy. Your e-mail constituted explicitly homophobic hate speech that was deeply hurtful to Mr. Wu and Ms. Luongo.

Notice has been taken of your position that Mr. Wu's initial e-mail was not work-related and allegedly created a "hostile work environment" for you. This position is unsupportable. As an institution, Legal Aid supports the movement for social justice for transgender women, including transgender women of color, the position advocated by Mr. Wu. Indeed, Legal Aid has established a LGBTQ Law and Policy Initiative for the purpose of advocating for the rights of this population and is actively engaged in litigation, advocacy, and training on their behalf. In sending an e-mail reflecting Legal Aid's institutional position regarding the rights of members of the LGBTQ community – a class expressly protected under New York City law – Mr. Wu did not create a "hostile work environment" under the Legal Aid Policy Prohibiting Discrimination and Harassment or under applicable law.

We are cognizant of your position that Legal Aid has discriminated against you for asking another staff member to have consideration for your religious beliefs. The decision to terminate has nothing to do with your religious beliefs, which you are free to hold without recrimination or penalty. You may not, however, engage in hate speech against employees of Legal Aid as an ostensible exercise of your religious beliefs – any more than any employee of Legal Aid could lawfully engage in any form of discrimination against a protected class of individuals based on their religious beliefs. Religious beliefs are neither a justification nor an excuse for engaging in unlawful discriminatory behavior.

Your employment with Legal Aid is therefore terminated effective immediately. The Human Resources Department will send information to you about post-termination benefits.

(b)     As set forth in the Grievance Decision:

I am reaffirming my decision that your e-mail of March 8, 2017, violated Legal Aid's Policy Prohibiting Discrimination and Harassment and E-Mail Policy. Your assertion, using the Legal Aid e-mail system, to a person who self-identifies as LGBTQ that a person's sexual orientation is sinful, abnormal, and unacceptable is a form of harassment based on a status protected under New York City law and Legal Aid policy. I am also reaffirming that in so finding, Legal Aid is not discriminating or retaliating against you because of the expression of your religious beliefs. Conduct that constitutes harassment based on LGBTQ status does not become immune from penalty because it is motivated by a religious belief, any more than harassment based on race, color, gender, disability, or any other characteristic protected under law can be excused because the harasser has a sincere religious belief

that this form of discrimination is justified.  Religious beliefs are simply not a justification for discrimination or harassment.

What remains is the question of the remedy that should be applied in the case of this violation.  I have taken into account the arguments of your representatives that the incident was isolated and that your evaluations do not reflect deficiencies in the representation of clients or relations with colleagues.  Nonetheless, I remain deeply concerned that you continue to fail to appreciate the gravity of the violation you committed toward a fellow member of Legal Aid's staff.  We do more than ask – we insist that Legal Aid staff treat one another with respect and dignity.  To condemn fellow staff as sinful, abnormal, and unacceptable because of a characteristic protected under law, a characteristic that is a part of their personhood and essence of being, is a grave breach.  Your continued insistence that you have done nothing wrong and this is simply a disagreement about lifestyle reflects more than a lack of self-awareness about the wrong you have committed.  It reflects that you do not regard a significant group of our staff as worthy individuals, as people who are entitled to respect and not denigration.  If you had demonstrated greater self-awareness of your wrongful conduct and an intention to accept this group as full equals in our community, I might have agreed with your representative's argument that a lesser penalty could be warranted. But in light of your insistence, after all this time for reflection, that you are entitled to denigrate fellow staff members solely because of their sexual orientation, a characteristic protected under law and Legal Aid policy, I find the termination of employment is justified.

I find no reason to modify this conclusion because other staff have allegedly sent e-mails pertaining to the Middle East with which you disagree.  Those e-mails did not denigrate Legal Aid staff or clients, and they did not create a hostile work environment.

29.     LAS denies the allegations set forth in the twenty-ninth paragraph of the Complaint and notes that Plaintiff's claims for retaliation have been dismissed.

## **CLAIMS FOR RELIEF**

30.     LAS denies the allegations set forth in the thirtieth paragraph of the Complaint.

31.     LAS denies the allegations set forth in the thirty-first paragraph of the Complaint and notes that Plaintiff's claims for retaliation have been dismissed.

## AFFIRMATIVE DEFENSES

LAS, by and through its undersigned counsel, asserts the following Affirmative Defenses:

### First Affirmative Defense

The Complaint, in one or more causes of action set forth therein, fails to state a claim upon which relief can be granted, in whole or in part.

### Second Affirmative Defense

At all relevant times LAS complied with all applicable federal, state, and local laws, rules, regulations, codes and standards.

### Third Affirmative Defense

Plaintiff cannot make out a prima facie case of religion-based discrimination or retaliation (which claims have been dismissed) under Title VII, the NYSHRL, or the NYCHRL.

### Fourth Affirmative Defense

LAS affirmatively denies that it or any of its agents or employees discriminated against Plaintiff based upon his religion.  (The retaliation claims have been dismissed.)

### Fifth Affirmative Defense

LAS affirmatively avers that it had legitimate, non-discriminatory business reasons for all employment actions involving Plaintiff.

### Sixth Affirmative Defense

LAS affirmatively avers that no employment actions concerning Plaintiff were a pretext for discrimination.

### Seventh Affirmative Defense

LAS affirmatively pleads the defense of good faith and affirmatively avers that at all

times LAS acted in good faith, and without any discriminatory, wrongful or malicious intent and without reckless indifference to legal requirements with respect to all of its employment actions concerning Plaintiff.  LAS further avers that it did not breach any obligations or duties owed to Plaintiff, to the extent any existed under applicable laws and regulations.

### Eighth Affirmative Defense

LAS avers that Plaintiff's religion played no role in any of LAS's actions regarding Plaintiff.

### Ninth Affirmative Defense

The Complaint fails to state a claim against LAS upon which an award of compensatory and/or punitive damages can be granted.

### Tenth Affirmative Defense

LAS affirmatively denies that Plaintiff sustained any damages as a result of any alleged discriminatory action or breach of contract by LAS and/or any of LAS employees or agents and affirmatively avers that Plaintiff is not entitled to any legal, equitable, declaratory, or monetary relief, including, but not limited to, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees or any other lost benefits.

### Eleventh Affirmative Defense

LAS affirmatively denies that Plaintiff sustained any damages as a result of any fault or wrongdoing on LAS's part.

### Twelfth Affirmative Defense

LAS asserts the right to rely upon any after-acquired evidence of misconduct by Plaintiff to mitigate any alleged damages.

**Thirteenth Affirmative Defense**

Even if Plaintiff sustained damages as the result of the conclusion of his employment, which is specifically denied, LAS avers that Plaintiff failed to make reasonable efforts to mitigate his alleged damages.

**Fourteenth Affirmative Defense**

Even if Plaintiff sustained and is entitled to damages, which is expressly denied, LAS is entitled to an offset of Plaintiff's alleged damages by: (a) all amounts of compensation and benefits received or to be received by Plaintiff subsequent to his employment with LAS; (b) all amounts that could have been or that could be earned in the future with reasonable diligence; and (c) all other offsets to damages permitted by law.

**Fifteenth Affirmative Defense**

LAS hereby reserves the right to assert additional separate defenses and affirmative defenses, cross claims, third party claims, and objections as revealed or suggested by ongoing investigation and discovery.

**WHEREFORE**, LAS respectfully requests that judgment be entered in its favor:

(i)     Dismissing the Complaint in its entirety, with prejudice against Plaintiff and at

Plaintiff's costs;

(ii)    Awarding LAS costs, expenses, and attorneys' fees; and

(iii)   Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 18, 2019

Respectfully submitted,

MILBANK LLP

By: */s/Jane L. Hanson*

Jane L. Hanson
Anthony R. Perri
55 Hudson Yards
New York, NY  10001
(212) 530-5500
(212) 822-5512
jhanson@milbank.com
aperri@milbank.com
*Attorneys for the Legal Aid Society*